IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY D'ANTONIO,<br><br>Plaintiff,<br><br>v.<br><br>BAYADA HOME HEALTH CARE, INC.,<br><br>Defendant. | CIVIL ACTION NO.<br><br>2:23-cv-4 |

## COMPLAINT

Captain Anthony D'Antonio files this Complaint against Defendant, BAYADA Home Health Care, Inc. ("BAYADA"), seeking relief for the discrimination he was subjected to for being a member of the Pennsylvania Army National Guard during his employment with BAYADA.

## PARTIES

1. Plaintiff, Anthony D'Antonio, is an adult individual who currently resides at 1139 Buente St., Pittsburgh, PA 15212 .

2. Defendant, BAYADA, is a Pennsylvania corporation with its national headquarters located at 4300 Haddonfield Rd, Pennsauken, New Jersey 08109.

3. At all relevant times, BAYADA was an employer as defined by the Uniformed Services Employment and Reemployment Rights Act ("USERRA" – 38 U.S.C. §§ 4301 *et seq.*) and the Pennsylvania Military Affairs Act ("PMAA" – 51 Pa.C.S.A. §§ 7301 *et seq.*).

4. Plaintiff is currently a Captain and Plans Officer with the Pennsylvania National Guard. At all times relevant, Plaintiff was a member of the Pennsylvania National Guard and protected by USERRA and the PMAA from discrimination due to his status as a member of the Pennsylvania National Guard.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States and Plaintiff seeks redress for violations of federal laws. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, because such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**FACTUAL BACKGROUND**

A. **BAYADA's Associate Leadership Development Program**

7. In July 2015, Plaintiff began his employment with BAYADA as a Client Services Manager in the company's Wilmington, North Carolina office. Plaintiff arrived at BAYADA with a bachelor's degree in Emergency Medicine and would eventually earned a master's degree in Healthcare Administration while working for BAYADA.

8. When Plaintiff began his employment with BAYADA, Defendant was aware of Plaintiff's status as a member of the Pennsylvania National Guard and his legal duty to fulfill certain obligations, when called upon, to continue serving his country.

9. BAYADA identified Plaintiff as a highly skilled and promising employee. As a result, Plaintiff was invited to participate in BAYADA's Associate Leadership Development Program ("ALDP").

10. BAYADA now markets the ALDP as a "a fast-track, twelve-month management trainee program designed to develop the best and brightest future leaders of BAYADA." However, when Plaintiff was in the ALDP, it was a 6-month management-trainee program.

11. Graduates of the ALDP are promised accelerated career growth and opportunities, and to be placed in a management position in one of the company's offices.

12. During the ALDP, Plaintiff was told that his career path essentially guaranteed a director-level position within 3-5 years of their completion of the program.

13. Plaintiff successfully completed the ALDP and was on track to achieve a director-level position before BAYADA began to discriminate against him for missing work due to his obligations to the Pennsylvania National Guard.

B. **BAYADA's Discrimination of Employees Who are Members of the United States Uniformed Services**

14. Plaintiff worked in BAYADA's North Carolina offices (Charlotte and Wilmington) for 6 months before moving to BAYADA's office in Philadelphia, Pennsylvania in 2016.

15. BAYADA informed Plaintiff that his stay with the company's Philadelphia office would be short-term (i.e., 6 months), before he would move to Pittsburgh, Pennsylvania to open up BAYADA's office in that city. In BAYADA's Pittsburgh office, Plaintiff would assume a director-level position with the company.

16. In recognition of the short-term nature of Plaintiff's stay in Philadelphia, BAYADA provided Plaintiff with a stipend for housing.

17. In BAYADA's Philadelphia office, Plaintiff was supervised by Steven Klug, who was a Division Director for BAYADA. It was in this office, and under Klug's supervision, that Plaintiff began to experience discrimination due to his status as a member of the Pennsylvania National Guard.

18. Throughout his employment with BAYADA, Plaintiff was required to satisfy training requirements with the Pennsylvania National Guard every calendar year.

19. In 2016, Plaintiff missed a total of 15 days of work to fulfill training requirements with the Pennsylvania National Guard.

20. It is believed that because Plaintiff missed 15 days of work in 2016 to fulfill training requirements with the Pennsylvania National Guard, Krug believed that Plaintiff was no longer suited to fill a director-level position with BAYADA.

21. As a result, Krug took steps to punish Plaintiff and prevent him from being promoted. First, Krug took away Plaintiff's housing stipend. Then, Krug delayed Plaintiff's move to Pittsburgh, Pennsylvania. It was not until Plaintiff spoke with Krug's boss that Plaintiff was permitted to move to Pittsburgh, Pennsylvania.

22. In October 2016, Plaintiff finally moved to Pittsburgh, Pennsylvania, and began working to open up BAYADA's new office in Pittsburgh. As part of that move, Plaintiff was responsible for coordinating and transferring cases from other offices in the Pittsburgh region to the new office.

23. In December 2016, BAYADA officially opened up its new office in Pittsburgh, Pennsylvania. In this new office, Plaintiff was responsible for nearly all of the day-to-day operations, which included billing, scheduling, recruiting, new client onboarding, orientations, interviews, and other general office tasks. In short, Plaintiff was performing the work of a Director at BAYADA and performing it well.

24. Plaintiff informed Krug that he would be leaving for 3 weeks of training with the Pennsylvania National Guard in late January 2017.

25. In response, Klug told Plaintiff that he needed to choose between the National Guard or BAYADA, but he could not continue doing both because he was missing so much work.

26. Plaintiff reminded Klug that his National Guard training was a requirement, and that BAYADA was legally required to allow him to miss work to fulfill those training requirements.

27. Plaintiff was subsequently passed over for a director-level position while on leave for National Guard training from January 31 through February 19, 2017. Plaintiff was not even given the opportunity to interview for that director-level position, which should have occurred because Plaintiff was qualified and a graduate of the ALDP. The individual who was handed the director-level position had no experience managing an office with BAYADA.

28. Plaintiff attempted to speak with Krug about being passed over for the director-level position on numerous occassions. Each time, Krug avoided discussing the issue with Plaintiff.

29. For the rest of Plaintiff's employment with BAYADA, this pattern of denying Plaintiff a promotion to a director-level position because of his status as a member of the Pennsylvania National Guard continued.

30. For example, in 2018, when Plaintiff missed 33 days of work due to National Guard training, Plaintiff interviewed for another director-level position that he was qualified for. This position was outside of Krug's purview.

31. After his interview, Plaintiff spoke with the BAYADA recruiter responsible for filling that director-level position, and that recruiter told Plaintiff that Klug was not recommending him for that promotion because of performance issues. Plaintiff later discovered that Klug went out of his way to discourage others at BAYADA from promoting Plaintiff due to these alleged performance issues.

32. At that time, Plaintiff had never been informed of any performance-related issues by Klug. In fact, Klug never spoke with Plaintiff about any performance-related issues throughout his employment because those issues did not exist.

33. Despite Klug's attempts to sabotage Plaintiff's career, Plaintiff persisted and continued to pursue director-level positions without success.

34. Each time that Plaintiff was passed over for a promotion to a director-level position, BAYADA awarded the position to a less-qualified employee who was not a member of the United States uniformed services.

35. When Plaintiff spoke with BAYADA recruiters about these continued issues, he was repeatedly told by those recruiters that he was qualified to receive a promotion to a director-level position and that they had no explanation why that had not occurred.

36. Things got worse for Plaintiff in 2022 as he was set to interview for 2 director-level positions. Each time, however, BAYADA cancelled those interviews without explanation and failed to provide Plaintiff with any opportunity to advance his career.

37. When Plaintiff spoke to a BAYADA recruiter about the interview cancellations, they stated that they had never heard of something like that happening with any other candidate.

38. Upon information and belief, BAYADA failed to create and/or implement policies concerning the company's obligation to not discriminate against members of the United States uniformed services pursuant to USERRA and the PMAA.

39. Upon information and belief, BAYADA failed to create and/or implement policies which addressed how military-related absences, such as National Guard training, should be handled when making decisions about promotions.

40. Upon information and belief, BAYADA believed that Plaintiff was not qualified for a director-level position solely because of the number of days he had to miss work each year for National Guard training and other obligations.

41. The stated reasons for denying Plaintiff a promotion to a director-level position, on the few occassions that a stated reason was actually given, were pretext. It is believed that BAYADA's decision to deny Plaintiff a promotion was part of an accepted pattern and practice of behavior in which the company refused to consider any employees for a director-level position if they missed a certain number of days of work in a calendar year.

42. By repeatedly denying Plaintiff a promotion to a director-level position that he had earned and was qualified for, BAYADA failed to comply with its obligations under USERRA and the PMAA.

43. It is believed that BAYADA acted willfully and in reckless disregard of Plaintiff's rights under USERRA and the PMAA when they refused to consider Plaintiff for a promotion because he was missing work every year due to National guard training and/or because of his status as a member of the United States uniformed services.

44. At all times relevant, Plaintiff was qualified for and able to complete all the essential functions of a director-level position at BAYADA.

45. As a result of BAYADA's discrimination, Plaintiff has suffered and will continue to suffer a substantial loss of earnings, including, but not limited to, loss of salary, benefits, health insurance, and other emoluments of employment.

46. As a further direct and proximate cause of BAYADA's discrimination, Plaintiff's reputation and career have been damaged.

## STATEMENT OF CLAIMS

### COUNT I
Violations of USERRA
(Plaintiff v. BAYADA)

47. Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth at length herein.

48. USERRA prohibits an employer from discriminating against an employee with regard to hiring, retention, promotion or any benefit of employment because of an employee's membership in any uniformed service.

49. As a member of the Pennsylvania National Guard, Plaintiff is a protected individual under USERRA.

50. The acts and omission by BAYADA that are described in this Complaint constitute discrimination in violation of USERRA.

51. As a proximate result of BAYADA's conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, consequential, and liquidated damages.

### COUNT II
Violations of the PMAA
(Plaintiff v. BAYADA)

52. Plaintiff incorporates by reference the allegations in the paragraphs above as if fully set forth at length herein.

53. PMAA prohibits an employer from discriminating against an employee with regard to hiring, retention, promotion or any benefit of employment because of an employee's membership in any uniformed service.

54.  As a member of the Pennsylvania National Guard, Plaintiff is a protected individual under the PMAA.

55.  The acts and omission by BAYADA that are described in this Complaint constitute discrimination in violation of the PMAA.

56.  As a proximate result of BAYADA's conduct, Plaintiff has or will suffer substantial harm, for which Plaintiff seeks general, compensatory, consequential, and liquidated damages.

## REQUESTS FOR RELIEF

Accordingly, Plaintiff requests that this Court enter judgment on his behalf and enter an order directing the award of other relief, as follows:

A.  Finding that BAYADA violated USERRA;

B.  Finding that BAYADA violated the PMAA;

C.  Awarding Plaintiff back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

D.  Awarding Plaintiff compensatory damages that may be available under USERRA and the PMAA;

E.  Awarding Plaintiff liquidated damages under USERRA and the PMAA;

F.  Awarding Plaintiff attorneys' fees and costs;

G.  Awarding Plaintiff pre- and post-judgment interest as provided by law; and

H.  Awarding Plaintiff any other relief to which he is entitled and/or which this Court deems necessary and proper.

**A jury trial is demanded for all claims triable by jury.**

        Respectfully submitted,

        /s/ Sammy Y. Sugiura
        Sammy Y. Sugiura
        PA I.D. No. 209942
        sammys@jpward.com

        J.P. WARD & ASSOCIATES, LLC
        201 SOUTH HIGHLAND AVE
        SUITE 201
        PITTSBURGH, PA 15206
        TELEPHONE: (412) 545-3016
        FACSIMILE: (412) 540-3399

        **COUNSEL FOR PLAINTIFF**